IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| REDWOOD PROFESSIONAL PLAZA, et. al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF WEST JORDAN, et. al., <br><br> Defendants. | ORDER AND <br> MEMORANDUM DECISION <br><br><br> Case No. 2:09 CV 702 (TC) |

Plaintiffs Redwood Professional Plaza, L.C. and Tingey Construction Company brought this 42 U.S.C. § 1983 action against the City of West Jordan; Tom Burdett, its director of community development; and Nathan Francis, its assistant city planner. Plaintiffs contend that Defendants' interpretation of Municipal Code § 87-5-111, a West Jordan ordinance, and its application to the Redwood Professional Plaza project violates substantive due process and equal protection guarantees.[1] Because the court concludes that Plaintiffs have failed to plead facts that would support a cognizable § 1983 claim based on either equal protection or substantive due process grounds, Defendants' motion to dismiss is granted.

**FACTUAL BACKGROUND**

The court draws the following facts from the Complaint. In 2003, Plaintiffs launched a

---

[1] As further discussed in the background section, this is the second time that Plaintiffs have filed a § 1983 suit regarding this dispute against the same parties. The court granted summary judgment to the municipality and municipal officials in the other case. See Redwood Rd. v. City of W. Jordan, No. 1:07 CV 153 (TC).

1

project to develop property on Redwood Road in West Jordan, Utah, into a subdivision known as the "Redwood Professional Plaza." Before beginning the project, Plaintiffs sought the necessary approval from the City of West Jordan ("the City").

At the time, Municipal Code § 87-5-111, a West Jordan ordinance, generally required developers to bury utility lines in new developments like the Redwood Professional Plaza. But Section 87-5-111(c) also provided that its "provisions . . . shall not apply to . . existing utilities." (Compl., 4, Docket No. 2.) The meaning of the existing utilities language is the core of the dispute between the parties here.[2]

Before the West Jordan Planning Commission met in November 2003 to consider the Redwood Professional Plaza project, the staff prepared a report recommending approval of the project and noting that Plaintiffs should be required to bury utilities "as per [Section] 87-5-111(c)." (Compl., 5.) When the Planning Commission approved the project on November 5, 2003, it informed Plaintiffs that they were required to bury utilities "as per 87-5-111(c)." (Id.) And when the Planning Commission approved Plaintiffs' preliminary site plan on November 19, 2003, it attached a copy of the minutes from the Planning Commission meeting, which included the statement that utilities would be buried "as per 87-5-111(c)." (Id.)

Plaintiffs started work on the Redwood Professional Plaza. They buried all new utilities, but left overhead those power lines that were in place when the project began. In Plaintiffs'

---

[2]Plaintiffs have described the history of Section 87-5-111, seemingly in an effort to help the court better understand their position regarding the proper meaning of the "existing utilities" language. The West Jordan Council (WJC) passed Ordinance Number 33 in February 1974. Ordinance Number 33 provided that "all new subdivisions proposed to be located within the city limits . . . shall have all utilities . . . located within each subdivision underground, and the lines of transmission thereof shall be buried beneath the surface of the ground." (Compl., 3, Docket No. 2.) At some later unspecified date, Ordinance Number 33 was amended specifying that its provisions "shall not apply to . . . existing utilities." (Id.) Ordinance Number 33 as amended was codified as Section 87-5-111(c) in 2001.

view, these power lines were "existing" and excluded from the burial requirement per the plain language of Section 87-5-111(c).

In February 2004, after final landscaping was complete and the sidewalks and sprinkler systems had been installed, the City denied the Plaintiffs a final occupancy certificate.  The City explained that the Plaintiffs had failed to bury the utility lines along Redwood Road as required. Defendant Tom Burdett, the development director for West Jordan City, explained that Section 85-7-111(c) excuses from the burial requirement only those utility lines that were in place when Ordinance Number 33 was enacted in 1974.

Plaintiffs argue this is the first time that they knew that this was the City's interpretation of Section 85-7-111(c).  They contend that Mr. Burdett never published this interpretation of the phrase "existing utilities" in Section 85-7-111(c), but only orally communicated it to staff. Plaintiffs further claim that after this incident, West Jordan allegedly amended Section 85-7-111(c) in October 2004, to delete the reference to "existing utilities," and to require the burial of all utilities.  (Id., 7.)

Plaintiffs deposited $15,419 with West Jordan in October 2004, to be held in escrow for the burial of any utilities.  The parties agreed that if work was not completed by April 2005, the bond would be forfeited and the City would perform any remaining work, charging the Plaintiffs for any additional cost.

In July 2006, West Jordan notified Plaintiffs that it would not accept the $15,419 in lieu of burying the existing utility lines.  Plaintiffs asked various city officials, including the city attorney and the mayor, to reconsider requiring that utility lines be buried, but to no avail.  One of the Plaintiffs final appeals was to the City Council.  Considering the appeal on its merits, the City Council determined in September 2007, that "pursuant to the West Jordan Municipal code,

Tingey Construction Company is required to bury the overhead utility lines adjacent to its development along Redwood Road." (Id., 8.)  The City required Plaintiffs to post an additional bond of $100,000 to obtain a temporary occupancy permit.  This bond would be held until either Plaintiffs buried the utility lines or a court resolved the dispute.

## PROCEDURAL BACKGROUND

Plaintiffs filed a federal lawsuit claims under 42 U.S.C. § 1983, alleging violations of federal takings, due process, and equal protections guarantees.  The court held that it lacked federal jurisdiction for the federal takings claim as Plaintiffs had failed to pursue available state remedies.   The court granted summary judgment in favor of Defendants in May 2009, and declined to exercise its supplemental jurisdiction over all remaining state law claims.

Next, Plaintiffs filed this suit in Utah state court for declaratory judgment as to the meaning of the "existing utilities" exception in Section 87-5-111(c).[3]  The suit presented claims for zoning estoppel and for compensation under the Utah Constitution for the alleged taking of their property.  Finally, Plaintiffs presented two claims pursuant to 42 U.S.C. § 1983.  They argued that the interpretation and application of Section 87-5-111(c) had violated federal and state due process and equal protection guarantees.  Defendants removed the case to federal court.

## ANALYSIS

Citing various provisions of Rule 12 of the Federal Rules of Civil Procedure, Defendants ask the court to dismiss Plaintiffs' Complaint.  Defendants raise several arguments, including their contention that Plaintiffs have failed to assert a cognizable § 1983 claim based on due

---

[3]Based on the Complaint Defendants filed with the Court in removing the action, Plaintiffs filed this action in Utah state court in June 2009.

process or equal protection violations.[4]  To survive a motion to dismiss for failure to state a claim, Plaintiffs must present claims to relief that are plausible on their face.  This means that Plaintiffs' allegations "must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008); see Christy Sports, LLC v. Deer Valley Resort Co., Ltd., 555 F.3d 1188, 1191 (10th Cir. 2009); Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007).  "[A] plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss."  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation and citation omitted).

### A.    Due Process Claim

Plaintiffs contend that Defendants arbitrarily and capriciously deprived them of their property in violation of their substantive due process rights.[5]  Plaintiffs' argument is as follows: They maintain that they complied with the plain language of Section 87-5-111(c), one of the requirements incorporated into the Redwood Professional Plaza approvals, when they failed to bury certain utility lines.  They claim that Mr. Francis and Mr. Burdett arbitrarily interpreted Section 87-5-111(c) in a manner inconsistent with the plain language of the ordinance and that Defendants allegedly relied on this interpretation when they refused to issue Plaintiffs a final occupancy certificate.

---

[4]The court does not consider Plaintiffs' claims based on the alleged violations of provisions of the Utah Constitution.  "Section 1983 serves as the basic vehicle for federal court review of alleged state and local violations of federal law."  Erwin Chemerinsky, Federal Jurisdiction 466 (4th ed. 2003) (emphasis added).  A "violation of state law alone does not give rise to a federal cause of action under § 1983."  Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994); see also Thompson v. Galetka, No. 01-4243, 2002 WL 1500545, *1 (10th Cir. July 15, 2002) (same).  Plaintiffs do not explain in their Complaint why the court should treat these alleged violations of the Utah Constitution differently for purposes of § 1983.

[5]The court considers only a substantive due process challenge here.  During the hearing, Plaintiffs confirmed that they are not alleging a violation of their procedural due process rights.

Among other things, the Fourteenth Amendment prohibits a state from depriving a party of "property without due process of law." U.S. Const. amend. XIV. While procedural due process ensures that a state will not deprive a party without using certain procedures, substantive due process ensures that "the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000). It "'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" Martinez Solorzano v. Holder, No. 09-9500, 2009 WL 3303577 (10th Cir. Oct. 15, 2009), quoting United States v. Salerno, 481 U.S. 739, 746 (1987) (quotations and citations omitted).

In order to plead a cognizable substantive due process claim, Plaintiffs must "first allege sufficient facts to show a property or liberty interest warranting due process protection." Crider v. Bd. of County Comm'rs, 246 F.3d 1285, 1289 (10th Cir. 2001); see also Jennings v. City of Stillwater, 383 F.3d 1199, 1205 (10th Cir. 2004) ("When a due process claim is premised on a deprivation of property, the court first must determine the precise nature of the property threatened by the state."). If Plaintiffs satisfy this requirement, the court will then consider whether they have alleged facts that would sustain the charge that the challenged governmental action was sufficiently improper such that it constituted a violation of due process guarantees.

**Property Interest**

Plaintiffs argue that they have a property interest in the "[i]ssued building permits" that they received for the Redwood Professional Plaza project. (Pls.' Mem. Opp'n Mot. Dismiss, 10, Docket No. 8.) They maintain that because they "complied with the 'rules' set by the City through the enactment of the existing utilities exception" in Section 87-5-111(c), they have a

legitimate claim of entitlement to the final occupancy permit.  (Id.)

In the context of due process, property is "a 'legitimate claim of entitlement' to some benefit." Hyde Park, 226 F.3d at 1210.  But, significantly, a protectable property interest is not created by an "abstract need for, or unilateral expectation of, a benefit." Id. (emphasis added). Protectable property interests are "created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law - - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Id. (quotation omitted); see also Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) ("Property interests . . . are not created by the constitution[,] [but] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.").  Whether an entitlement exists depends on the "degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome." Id. (emphasis added).

Plaintiffs are correct that issued building permits can create a protectable property interest.  But here, the issuance of those permits was expressly conditioned on the fact that Plaintiffs would bury utilities per Section 87-5-111(c).  Subject to obvious limitations, Defendants have discretion to reasonably interpret the meaning of the phrase "existing utilities" found in Section 87-5-111(c).  Plaintiffs are not entitled to adoption of their interpretation of ordinance, which they unilaterally expected.  Consequently, Plaintiffs do not have a legitimate claim of entitlement to the issuance of a final occupancy permit when they failed to comply with one of the conditions of the permit as defined by Defendants.

**Challenged Governmental Action**

Even assuming that Plaintiffs could demonstrate that they had a protectable property

interest, there are two reasons that Plaintiffs' substantive due process claim cannot stand.

First, case law suggests that the type of property rights here are not the kinds of rights that are subject to substantive due process guarantees. Substantive due process protects "fundamental rights," which are "rights created by the Constitution." Greenbriar Village, L.L.C. v. Mountain Brook City, 345 F.3d 1258, 1262 (11th Cir. 2003); see also Graves v. Thomas, 450 F.3d 1215, 1220 (10th Cir. 2006) ("Substantive due process claims are not based on state law but are founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." (quotation omitted)). Property rights are not created by the Constitution, but by other independent sources like state law. Greenbriar Village, 345 F.3d at 126. Consequently, to the extent that a substantive due process claim relies "directly on the denial of [a] state-granted-and-defined property right in the permit, no substantive due process claim is viable." Id.

The Eleventh Circuit was faced with a similar issue in Greenbriar Village. There, a developer owned a ten-acre plot of land, which he wanted to use for commercial purposes even though the property was zoned for residential use. Despite the developer's repeated efforts, the municipality was unwilling to change the zoning. The developer started to work on the land and secured a land disturbance permit in 1998, which would allow the developer to remove trash and other debris from the land. Notably, the permit was specifically for the clearing of a commercial site. The permit had no expiration date, nor did the applicable ordinances at the time provide for an expiration date.

After the municipality's attorney realized that conflict between the permit and the zoning of the property, he warned the developer that the land disturbance permit did not allow for any use contrary to the zoning of the property. The municipality passed an ordinance that provided all permits issued before July 1999 would expire within thirty days of the effective date. The

developer filed suit, arguing, in part, that the municipality had acted irrationally and arbitrarily by effectively revoking the land disturbance permit in violation of its substantive due process rights.

Relevant to Plaintiffs' challenge here, the Eleventh Circuit affirmed the district court's conclusion that substantive due process concerns were not implicated by the municipality's actions. The court highlighted the "dangers of broadening the scope of substantive due process in this fashion." Id. at 1263. It explained that "non-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrary and irationally." Id. (quotations omitted). The Eleventh Circuit concluded that to the extent that the developer "predicate[d] its substantive due process claim directly on the denial of its state-granted and-defined property right in the permit, no substantive due process claim is viable." Id. at 1262.

The Eighth Circuit Court of Appeals employed similar reasoning in Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102 (8th Cir. 1992). In that case, a developer sued a city, its mayor, and members of the city council claiming that the defendants had violated the developer's substantive due process rights by enforcing an allegedly invalid zoning plan against it. In affirming the district court's dismissal of the case, the court explained that even if it concluded that the city had "knowingly enforced" a particular zoning ordinance in "bad faith" and that no claim could be made that these ordinances should have applied to the property, a constitutional violation did not exist. Id. at 1105. At most, reasoned the court, although such actions would violate state law they were the "kind of 'truly irrational governmental action that gives rise to a substantive-due-process claim" as "no right created by the Due Process Clause of the Fourteenth Amendment has been violated." Id.

Finally, the court finds the following statements of the First Circuit Court of Appeals in Creative Environments Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982) instructive:

> A federal court . . . should not . . . sit as a zoning board of appeals . . . Every appeal by a disappointed developer from an adverse ruling . . .necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as 'due process' or equal protection' in order to raise a substantial federal question under section 1983.

Id. (emphasis in original). The court further explained that if a federal court became involved in this kind of dispute:

> any hope of maintaining a meaningful separation between federal and state jurisdiction in this and many other areas of law would be jettisoned. Virtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to a federal court on the theory that the erroneous application of state law amounted to a taking of property without due process. Neither Congress nor the courts have, to date, indicated that section 1983 should have such a reach.

Id.

### B.   Equal Protection Claim

Plaintiffs next argue that the interpretation and application of the existing utilities exception in Section 87-5-111(c) violated equal protection guarantees. Defendants allegedly did not require at least seven other developments and subdivisions to bury their utility lines. According to Plaintiffs, they were intentionally treated differently and no rational basis exists for this difference.

Because Plaintiffs are not members of a suspect of quasi-suspect class,[6] they must

---

[6] The term quasi-suspect class is widely used in case law and refers to those classes that qualify for a more heightened level of scrutiny than rational basis review. E.g., City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 442 (1985) (concluding that mental retardation is not a "quasi-suspect classification calling for a more exacting level of judicial review"); United States v. Weed, 389 F.3d 1060, 1071 (10th Cir. 2004) (noting for purposes of equal protection that "[i]nsanity acquittees are not members of a suspect or quasi-suspect class, nor is a fundamental

proceed as a class of one.  See <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000); <u>Jicarilla Apache Nation v. Rio Arriba County</u>, 440 F.3d 1202, 1209 (10th Cir. 2006).  "In the paradigmatic class-of-one case, a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive."  <u>Jicarilla</u>, 440 F.3d at 1209.

To prevail on such an equal protection claim, Plaintiffs must demonstrate, first, that Defendants intentionally treated them differently from those who are similarly situated.  Second, Plaintiffs must demonstrate that "the official action was <u>objectively</u> and irrational and abusive."  Id. at 1211 (emphasis in original).  Most circuits, including the Tenth Circuit, "proceed[] cautiously in applying the theory, sensitive to [the] warning against turning even quotidian exercises of government discretion into constitutional causes."  <u>Id.</u> at 1209; see <u>Jennings v. City of Stillwater</u>, 383 F.3d 1199, 1210-11 (10th Cir. 2004).

**<u>Similarly Situated</u>**

Plaintiffs must show that they were treated differently from those similarly situated.  This requirement "'is especially important in class-of-one cases."  <u>Jicarilla</u>, 440 F.3d at 1212; <u>see</u> <u>Jennings</u>, 383 F.3d at 1213.  They must demonstrate similarity "in all material respects." <u>Jicarilla</u>, 440 F.3d at 1212-13 (emphasis in original).  They "cannot prevail if there is <u>any</u> material difference between it and allegedly similarly situated parties that relates to a government

---

right at stake"); <u>Elliott v. Simmons</u>, No. 03-3280; 2004 WL 1240915, *2 (10th Cir. June 7, 2004) (noting that because plaintiff does not allege that he is a member of a "suspect or quasi-suspect class . . . we presume the regulatory scheme to be valid unless it is not 'rationally related to a legitimate state interest.'"); <u>Grigsby v. Barnhart</u>, 294 F.3d 1215, 1220 (10th Cir. 2002) (noting that because the distinction made by the challenged classification "involves no suspect class or quasi-suspect class, and it impinges upon no fundamental right . . . the rational basis test applies"); <u>Nabozny v. Podlesny</u>, 92 F.3d 446, 458 (7th Cir. 1996) (declining to decide whether homosexuals are a suspect or quasi-suspect class).

interest." Id.

This is an "exceedingly difficult" burden as any difference in treatment cannot be attributable to a "quirk" or "even to the fallibility of administrators whose inconsistency is as random as it is inevitable." Id. at 1212-13; see also Jennings, 383 F.3d at 1214 ("When multiple variables are in play, however, the difference in treatment can be the product of a number of considerations, conscious or otherwise, many of them legitimate."). "Inevitably, the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case." Id. at 1213. Other circuits have required a plaintiff show it is "prima facie identical . . . in all relevant respects" to the party claimed to be similarly situated. Purze v. Vill. of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002).

A review of Crider v. Board of County Commissioners of the County of Boulder, 246 F.3d 1285 (10th Cir. 2001), is helpful to understand Plaintiffs' burden here. In Crider, the owners of six residential properties, totaling eighty acres, claimed that municipalities and their officials had violated equal protection and substantive due process guarantees by placing the residential landowners in a rural preservation zone. In support of the equal protection claim, the residential property owners argued that they had not learned about the preservation zone until all negotiations were complete. But they claimed that their neighbor, a commercial entity that owned an adjacent eighty-acre lot, was allowed to object to being included in the rural preservation zone and was ultimately left out.

In affirming the district court's dismissal of the equal protection claim, the Tenth Circuit noted that the residential property owners had "failed to allege facts sufficient to establish that they are similarly situated to" the commercial entity. Id. at 1289. While the properties owned by the residential owners and the commercial entity "allegedly total eighty acres and are adjacent,

that is whether the similarity ends." Id.  The court noted many of the other differences between the two groups, including the distinction between the nature of each (a commercial entity as opposed to residential owners), and the status of their property (the residential owners had developed their property while the commercial entity's land was undeveloped).  The Tenth Circuit concluded that because the residential owners "failed to allege facts sufficient to establish that they [were] similarly situated to" the commercial entity, the residential owners failed to state a valid equal protection claim.  Id.

Here Plaintiffs assert that the City "has not required other similarly situated developers to bury the utilities that existed prior to the approved development." (Compl., 12, Docket No. 2.)  But Plaintiffs failed to plead any facts that would sufficiently support this statement.  Plaintiffs neglected to narrowly define with specificity the class of entities that it claims is similarly situated - - developers engaged in commercial developments is not enough.[7]  And they failed to make any effort in their Complaint to present facts regarding these other entities that would demonstrate similarity in all material respects.  Plaintiffs simply claim that the City did not require some of the other developers to bury "the very same utility lines as at issue in Plaintiffs' development."  (Id., 13.)  This is not enough.  As case law clearly indicates, no equal protection claim exists if the alleged difference in treatment between Plaintiffs and these other developments and subdivision can be attributed to a quirk or random inconsistency, and based on

---

[7]As the Tenth Circuit explained in Jennings, a definition of similarly situated cannot be so broad such that it could be "applied to any group of applicants where, looking back, one could see that there had been some who succeeded and some who failed." 383 F.3d at 1214 (quotation omitted).  For example, as the Tenth Circuit explained, "high school students who applications to a particular college were rejected could allege that they were being treated differently from the 'similarly situated fellow students who applications were accepted. [But] . . . one would want to know a good deal more about the merits of individual applicants before deciding who was similarly situated to whom." Id. (quotation omitted).

the facts in the Complaint, there is no way for the court to know.  Plaintiffs have failed to meet their exceedingly difficult burden and plead a plausible claim for an equal protection violation based on a class of one.

**Nature of the Government Action**

Even if Plaintiffs had sufficiently shown in the Complaint that they were similarly situated to the other developments and subdivisions, they did not present facts that would support a plausible claim that Defendants' conduct was objectively irrational and abusive.

"[A] class-of-one plaintiff must show that the official action was _objectively_ irrational and abusive," such that "pretext is not an issue."  Jicarilla, 440 F.3d at 1211 (emphasis in original).  The court must consider whether the proffered justifications for any difference in treatment among those similarly situated was "objectively reasonable," not whether they were "sincere."  Id.

Based on the facts alleged in the Complaint, Plaintiffs clearly disagree with Defendants' interpretation of the existing utilities exception in Section 87-5-111(c).  Plaintiffs contend that this Defendants have "selectively, unjustifiably, and without rational basis applied their interpretion" of Section 87-5-111(c) to only them and not other developments. (Compl., 13, Docket No. 2.)  But even when considered in the light most favorable to Plaintiffs, the facts in the Complaint do not present a plausible claim that the government action was objectively abusive and irrational.  However dissatisfied Plaintiffs might be with the results of Defendants' actions, the issue here is the interpretation and application of a municipal ordinance.  And nothing presented by Plaintiffs suggests that a plausible claim exists that Defendants acted in such an objectively abusive and irrational manner in order to constitute a equal protection claim.

Plaintiffs have failed to plead a cognizable § 1983 claim based on an alleged equal

14

protection violation.  They have not plead sufficient facts to present a plausible claim that they are similarly situated to others who were allegedly treated differently with regard to the burial requirements.  Even assuming that they had, they failed to demonstrate that the government conduct at issue in this case was objectively irrational and abusive.

## CONCLUSION

Because Plaintiffs failed to plead a cognizable claim pursuant to 42 U.S.C. § 1983, Defendants' Motion to Dismiss is GRANTED.  (Docket No. 4.)  The court declines to exercise supplemental jurisdiction over any remaining state law claims.

SO ORDERED.  DATED this 18th day of December 2009.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge